IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |
|---|---|
| ASKARI DANSA M. S. LUMUMBA,<br>formerly known as<br>DALE LEE PUGHSLEY,<br>　　　　Plaintiff,<br>v.<br><br>BLEVINS, et al.,<br>　　　　Defendants. | CASE NO. 7:20cv00599<br><br>MEMORANDUM OPINION<br><br>By: Hon. Michael F. Urbanski<br>　　Chief United States District Judge |

The plaintiff, Askari Dansa M. S. Lumumba ("Lumumba"), formerly known as Dale Lee Pughsley,[1] a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials have censored his outgoing and incoming secure email communications in violation of his First Amendment, Equal Protection, and Due Process rights. Upon review of the record, the court concludes that the defendants' Motion to Dismiss must be granted in part and denied in part.

I.

Lumumba is an inmate in the custody of the Virginia Department of Corrections ("VDOC"), and at all times related to this lawsuit, he was incarcerated at Red Onion State Prison ("Red Onion"), a facility operated by the VDOC. In addition to postal mail and telephone access, inmates in VDOC facilities have limited access to "secure messaging" that VDOC policy describes as "a web-based program that operates on the DOC Contract

---

[1] Several months after filing this case, the plaintiff provided the court with documentation indicating that he had legally changed his name to Lumumba and asking to have records changed to litigate under this name. See Letter, ECF No 18. The docket was amended to reflect this change, and the court will refer to the plaintiff as Lumumba.

Vendor's server which allows offenders and outside users to communicate by messaging through the offender's media device." *See* VDOC Operating Procedure ("OP") 803.1(VIII)(A), Mot. Dism. Ex. 1, ECF No. 14-1.[2]  This OP, which also governs inmates' postal mail, expressly states that "[s]ecure messaging is a privilege" and "is provided for personal communications for individual offenders to maintain relationships in the community, only." OP 803.1(VIII)(A)(1), (C)(2).  These messages may not be used for business purposes or to attach pictures or photos of nude or semi-nude persons.  OP 803.1(VIII)(A).  "Forwarding of secure messages is not permitted." OP 803.1(VIII)(E)(3).

"All incoming and outgoing messages will be screened and must comply with the regulations governing written correspondence." OP 803.1(VIII)(E).  "Messages and attachments that do not comply with the content requirements of this procedure will be returned to sender." OP 803.1(VIII)(C)(6).  Postal mailings are also screened, and if a staff member determines that an incoming mailing is unauthorized, he will send both the sender and the intended recipient inmate a copy of the Notice of Unauthorized Correspondence form or a letter similar to that form.  Mot. Dism Ex. 2, ECF No. 14-2.  This form includes the inmate's name and number, the name and address of the non-inmate sender, and the reason for the rejection of the mailing as unauthorized.

---

[2] When ruling on a Motion to Dismiss, the court may "consider documents that are explicitly incorporated into the complaint by reference" as well as those that are attached to the Complaint as exhibits. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Lumumba specifically references and relies on VDOC OP 803.1 (*see* ECF No. 1, ¶¶13-18, 35-37, 42-43) and the OP's Notice of Unauthorized Correspondence (ECF No. 1, ¶ 42). Indeed, these documents are integral to his claims. While Lumumba does not attach these documents to his Complaint, the defendants have attached copies to their motion, Mot. Dism Ex. 1 and 2, ECF Nos. 14-1 and 14-2. Accordingly, the court takes judicial notice of these documents as intrinsic to consideration of Lumumba's claims and defendants' response thereto without converting the defendants' motion into one seeking summary judgment. *Goines*, 823 F.3d at 166.

When a secure email message is returned to the sender, a notice and a reason for the return will be provided electronically to the inmate on his media device. OP 803.1(VIII)(C)(6)(a). He may appeal that rejection by filing an Informal Complaint form, including the date of the email rejection as indicated on his device. OP 803.1(VIII)(C)(6)(b), (c). Per policy, the response to such an Informal Complaint should be provided by a staff member with access to secure messages and should provide "the letter ID, date of rejection and customer ID." OP 803.1(VIII)(C)(6)(d). If the inmate wishes to appeal the rejection of his message, he can then file a Regular Grievance providing the information about his message so that the institutional grievance coordinator can investigate the contents of the rejected message and respond appropriately. OP 803.1(VIII)(C)(6)(e), (f).

Lumumba alleges the following facts on which he bases his claims. On March 4, 2020, Lumumba's outgoing email to his mother, Susan Kee, which he asked her to forward to the Virginia Department of Health ("VDH") was "censored by [Major] Blevins for allegedly violating COPD, LAW, or DOC policy." Compl. 11, ECF No.1. On March 5, 2020, Lumumba's outgoing email to the Coalition for Justice, designated for forwarding to the VDH, was "censored by Blevins." *Id.* On March 17, 2020, Lumumba sent an "op ed he'[d] written to Sandra Hausman, the Coalition for Justice, and Phil Wilayto . . . which was censored by Blevins." *Id.* Lumumba states that he sent this op ed to these parties to be printed in their "publication." Resp. Attach. 4, ECF No. 16-1. On March 22, 2020, Blevins denied Lumumba an incoming email after determining that it would be "detrimental to [the inmate's mental health." Compl. 16, ECF No. 1. Lumumba asserts that he does not have a history of mental illness or any prison classification as requiring mental health consideration.

On March 24, 2020, Lumumba's outgoing email addressed to the Coalition for Justice, but designated for the "ACLU (Virginia chapter) was censored by Blevins." *Id.*; Resp. Attach. 7, ECF No. 16-1. On March 25, 2020, Lumumba had four outgoing emails, addressed to different people, with intent for the email to be forwarded to the "ACLU (Virginia chapter)" that were "censored by Blevins when he determined the email contained detrimental content." *Id.*

Lumumba filed his § 1983 Complaint in October 2020, against Blevins at Red Onion and two VDOC administrators, A. David Robinson, Chief of Corrections Operations, and Harold Clarke, VDOC Director. The court liberally construes Lumumba's Complaint as alleging the following constitutional claims:

1. Blevins censored Lumumba's outgoing emails on March 4, 5, 17, 24, and 25, 2020, in violation of his First Amendment right to freedom of speech.

2. The VDOC provision in OP 803.1(VIII)(E)(3) that prohibits forwarding of inmate emails violates (a) the plaintiff's First Amendment right to free speech because an inmate is incapable of forwarding an email, and (b) the Equal Protection Clause, because inmates can ask postal mail recipients to forward postal mail to other recipients.

3. Blevins censored Lumumba's incoming email on March 22, 2020, asserting that it would be detrimental to Lumumba's mental health.

4. The VDOC provision in OP 803.1(VII)(A)(2), (3), governing notice regarding rejected secure messages, (a) violates the Due Process Clause, by failing to provide inmates with sufficient notification of the sender's identity and the reasons for rejection of an email;

> and (b) violates the Equal Protection Clause, because notice requirements for rejected emails are different than the notice requirements for rejected postal mail.

As relief in this action, Lumumba seeks declaratory, injunctive, and monetary relief, including reimbursement for the payments (known as stamps) for his rejected emails. The defendants have filed a Motion to Dismiss, and Lumumba has responded, making the matter ripe for decision.

II.

**A. Standards of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).[3] In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The rule

> does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor should the Court accept a plaintiff's "unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations." *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996).

---

[3] The court has omitted citations, internal alterations, and/or internal quotation marks here and elsewhere in this Memorandum Opinion, unless otherwise noted.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To state an actionable claim, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B.     First Amendment Right to Free Speech**

It is well established that constitutional rights do not end outside prison walls, but that "a prison inmate retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Accordingly, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.." *Turner v. Safley*, 482 U.S. 78, 89 (1987). For example, prison officials' needs for "deterrence of crime, rehabilitation of prisoners, and institutional security" qualify as legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). When conducting the applicable reasonableness test, courts must "accord substantial deference to the professional judgment of prison administrators," and the prisoner bears the burden of proving that the regulation in question is unreasonable. *Overton*, 539 U.S. at 132.

The defendants have conceded that inmates, like Lumumba, have a First Amendment right to receive written mail through the postal service. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Courts have held, however, that inmates do *not* have an identical constitutional right

to receive or send electronic messages, better known as emails. *See, e.g., Dunlea v. Federal Bureau of Prisons, the U.S. District Court for the District of Connecticut,* No. 3:10cv214 (CFD), 2010 WL 1727838, at *2 (D. Conn. Apr. 26, 2010) (federal prison email program uses could be lawfully revoked or limited in purpose because alternative communication methods were available) (*abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010)); *Glick v. Montana Dept. of Corrections*, No. CV 07-41-H-DWM, 2009 WL 2959730, at *2 (D. Mont. May 7, 2009) (no constitutional right for inmates to have computer or email access, when other means for free expression and speech are available).

When a prison system permits inmates to utilize multiple means of outside communications, prison authorities may lawfully impose reasonable time, place, and manner restrictions on the use of one or more of those communication means without infringing on inmates' First Amendment rights to free speech. *See, e.g., Pell v. Procunier*, 417 U.S. 817, 827–28 (1974). In *Pell*, the Supreme Court found that a "restriction on one manner in which prisoners can communicate with persons outside of prison" is not unconstitutional if "the restriction operates in a neutral fashion, without regard to the content of the expression." *Id.* at 827.

The defendants contend that the restrictions under which staff censored Lumumba's outgoing and incoming emails were based on time, place, or manner. They assert that the secure messaging policy's stated intent to foster inmates' personal relationships within the community is, on its face, evidence that the anti-forwarding restriction is reasonably related to legitimate penological interests. Moreover, they contend, some of Lumumba's rejected emails

were directed to, or received from, organizations, rather than individuals. Thus, the defendants argue that Lumumba's First Amendment claims must be dismissed.

The court cannot agree. First, as Lumumba points out, inmates physically cannot forward secure messages from their devices. Yet, the policy prohibits forwarding secure messages. When Lumumba asked email recipients to forward messages to other recipients, his emails were censored and returned to him. The defendants have not offered any evidence that this restriction, apparently directed at inmates' email recipients, is reasonably related to furthering legitimate penological interests. Second, some of Lumumba's secure messages (outgoing and incoming) were censored based on the perceived detrimental nature of their content, not on any designated violation of the time, place, or manner restrictions in the secure messaging policy. Thus, the court cannot find on the current record that the censorship of Lumumba's emails has been neutral, "without regard to the content of the expression." *Pell*, 417 U.S. 827.

The court concludes that Lumumba's censorship claims allege facts stating possible violations of his First Amendment rights. As such, the defendants' qualified immunity defense is not well taken at this stage of the litigation. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (first facet of qualified immunity standard is whether "facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a federal right"). The court will deny the Motion to Dismiss as to Lumumba's First Amendment claims (1), (2)(a), and (3).

**C. Due process claims**

To state a procedural due process violation, "a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due

process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "The interests of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment.'" *Pell*, 417 U.S. at 824 (quoting *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). In *Martinez*, the Supreme Court upheld a procedure requiring that a decision to "withhold delivery of a particular letter must be accompanied by minimal procedural safeguards"—the inmate must be notified that his mail has been rejected, he must be given "a reasonable opportunity to protest that decision." and any appeal of the decision must be referred to someone other than the person who initially rejected the mail. 416 U.S. at 417, 418-19; *see also Tory v. Davis*, No. 7:18CV00393, 2020 WL 2840163, at *4 (W.D. Va. June 1, 2020) (applying *Martinez* procedural protections to due process claims regarding inmate emails).

The record indicates that Lumumba has received adequate procedural protection related to his rejected emails. When an email is rejected, the inmate receives notice on his media device. To object and find out more information about the rejected email, he may file an Informal Complaint, and in response, staff will provide him "the letter ID, date of rejection and customer ID." OP 803.1(VIII)(C)(6)(d). If the inmate wishes to appeal, he may file a Regular Grievance about it, and the institutional grievance coordinator will investigate the rejection and the contents of the returned message. OP 803.1(VIII)(C)(6)(e), (f). The court concludes that these procedural protections more than satisfy the requirements approved in *Martinez*. Therefore, the court will grant the Motion to Dismiss as to claim (4)(a).

**D. Equal Protection Claims**

The Equal Protection Clause of the Fourteenth Amendment, § 1, prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." This provision "does not forbid classifications. It simply keeps governmental decisionmakers from treating differently *persons* who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (emphasis added). To succeed on a claim that his equal protection rights have been violated, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Lumumba contends that the Equal Protection Clause is violated by the differences between VDOC regulations governing postal mail and secure messages—regarding forwarding of mail and notice requirements when a mailing or email message is censored (rejected). These complaints do not give rise to any equal protection claim. Lumumba simply does not allege that two groups of similarly situated persons have been treated differently, based on purposeful discrimination. Rather, he wants all of his mailings (postal or digital) to be subject to the same regulations. The court finds no respect in which the equal protection clause requires prison officials to have identical regulations governing two very different types of inmate communications, particularly when one of those types is a privilege that could be eliminated without violating inmates' right to communicate with others outside the prison. *See, e.g., Chatman v. Clarke*, No. 7:16cv509, 2016 WL 7480426 (W.D. Va. Dec. 29, 2016)

(summarily dismissing inmate's claims that he was unconstitutionally denied access to privilege of electronic messaging while he was in segregation) (citing other cases).

III.

For the stated reasons, the court will grant the defendants' Motion to Dismiss as to Lumumba's due process and equal protection claims and will deny the motion as to his First Amendment claims. An appropriate Order will issue herewith.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties

**ENTERED** this 14th day of February, 2022.

Michael F. Urbanski
Chief U.S. District Judge
2022.02.14 17:57:04
-05'00'

Michael F. Urbanski
Chief United States District Judge